IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02128-DDD-CYC

DARREAYAN WEBBER,

    Plaintiff,

v.

KEVIN HICKS,
JOSHUA SADLER-ANDREAS, and
AUGIPITO HERRERA,

    Defendants.

___

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

**Cyrus Y. Chung, United States Magistrate Judge.**

    Arguing that video of their encounter with plaintiff Darreayan Webber shows that they used only appropriate force, defendants Kevin Hicks, Joshua Sadler-Andreas, and Augipito Herrera move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the plaintiff's complaint alleging excessive force. ECF No. 80. Because the video, properly considered here, supports that contention, the Court **RECOMMENDS** that the motion be **GRANTED**.

### BACKGROUND

    As indicated above, there is a threshold issue here. Generally, a court considers only the facts alleged in a plaintiff's complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Consideration of other materials usually requires conversion to a motion for summary judgment. Fed. R. Civ. P. 12(d). As with any general rule, though, there are exceptions. Relevant here, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not

dispute the documents' authenticity." *Cnty of Santa Fe, N.M., v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). That is the case for Hicks's and Herrera's body-worn camera (BWC) footage. *See* ECF No. 109. The footage is certainly central to the plaintiff's claim. After all, he avers in the Second Amended Complaint ("SAC") that "you can also see another officer dig the cuffs into my wounds" and indicates that he "listed all officers involved to look at the body cam footage." ECF No. 63 at 4. And "[n]either side appears to challenge the video's authenticity." *Est. of Ronquillo by & through Est. of Sanchez v. City & Cnty. of Denver*, No. 16-CV-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016), *aff'd*, 720 F. App'x 434 (10th Cir. 2017). Indeed, the plaintiff explicitly invokes the video in his response to the defendants' motion. ECF No. 105. As such, "the authenticity of the recordings is not in dispute," and "the Court can consider the BWC recordings without converting the motion to a summary judgment motion." *Pittman v. City of Aurora*, No. 19-CV-01947-PAB-NRN, 2020 WL 6586659, at *4 (D. Colo. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6585841 (D. Colo. Nov. 10, 2020); *see Strepka v. Thompson*, No. 18-CV-02557-RBJ-STV, 2019 WL 5790710, at *1 n.1 (D. Colo. July 24, 2019) (reviewing video evidence in ruling on a motion to dismiss where footage was referenced in the complaint), *report and recommendation adopted*, 2019 WL 4316523 (D. Colo. Sept. 12, 2019), *aff'd*, 831 F. App'x 906 (10th Cir. 2020). "In so doing, the Court views the video in the light most favorable to Plaintiff, except where the video 'blatantly contradicts' Plaintiff's version of the events." *Est. of Ronquillo*, 2016 WL 10843787, at *2 (quoting *Thomas v. Durastanti*, 607 F.3d 655, 672 (10th Cir. 2010)).

With that foundation in place, the Court recounts the facts at issue. On April 3, 2023, the plaintiff, a pretrial detainee at the Arapahoe County Detention Facility, attempted to commit suicide in his cell by cutting his wrists using glass. ECF No. 63 at 2, 4. A sheriff's deputy

2

observed the plaintiff's actions and called in additional deputies, including the defendants. *Id.* As Deputy Hicks approached the plaintiff's cell, Deputy Coby Yannacone informed him that the plaintiff was armed (with the aforementioned glass) and was cutting himself. ECF No. 109, Ex. 3 at 00:00-00:09. Standing outside the cell, Deputy Yannacone repeatedly directed the plaintiff to drop the weapon and lay down on his stomach, *id.* at 00:35-00:58, 01:12-01:24, contrary to assertions in the SAC about a lack of such requests, ECF No. 63 at 4. The plaintiff did not comply and, as a result, Deputy Yannacone informed him that deputies would enter the cell and use force. ECF No. 109, Ex. 3 at 00:35-03:02.

That did not occur immediately. Instead, deputies first requested that the plaintiff stick his hands through the door slot. Ex. 3 at 03:02-04:15. The plaintiff eventually complied and was handcuffed. *Id.* at 04:00-04:20; ECF No. 63 at 4. Next, Deputy Hicks opened the door slightly and asked the plaintiff for the weapon, to which the plaintiff responded, "My hands are cuffed. . . . How the fuck am I going to use my weapons of mass destruction?" ECF No. 109, Ex. 3 at 04:30-04:45; Ex. 4 at 04:45-04:55. Contrary to the plaintiff's allegations, ECF No. 63 at 4, the BWC footage does not show Deputy Hicks pulling the plaintiff through the door, pushing him down to the floor, and punching him. Instead, deputies then attempted to remove the plaintiff from his cell, whereupon he kicked Deputy Hicks and spit in several deputies' faces. ECF No. 109, Ex. 3 at 04:45-06:15. Deputies then brought the plaintiff to the ground, and he began screaming, *id.* at 04:40-04:55; *id.* Ex. 4 at 04:50-05:05, though not, as the plaintiff says, because a deputy was digging handcuffs into the plaintiff's wounds, *see* ECF No. 63 at 4.

Four months later, the plaintiff commenced this action, initially including the Arapahoe County Detention Facility ("ACDF") in addition to the three defendants named here. ECF No. 1. Because the plaintiff is a prisoner seeking redress from a government employee, the Court

3

screened his complaint pursuant to 28 U.S.C. § 1915A, ordering certain amendments to the complaint. ECF No. 15. The plaintiff's Amended Complaint accordingly removed ACDF as a party and instead named Deputy Yannacone as a defendant. ECF No. 21. On May 30, 2024, the Court held a Status Conference and granted the plaintiff leave to file a SAC. ECF No. 63. The plaintiff did so, removing Deputy Yannacone from the case and asserting a single claim of excessive force under 42 U.S.C. § 1983 against the current defendants. *Id.*

This motion followed. ECF No. 80.

## ANALYSIS

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Rule 12(b)(6) accordingly provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain sufficient factual matter, taken as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a court looks to whether "the plaintiff" has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The defendants' motion adds a gloss of qualified immunity. "Individual defendants named in a § 1983 action" like the plaintiff's claim here "may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was

4

unreasonable in light of clearly established law." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) "[W]here a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). It entails "a two-part burden" for a plaintiff "to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D.*, 868 F.3d at 1220 (internal quotation marks omitted). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regardless of the order, "if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016). The plaintiff falls short on both prongs.

His single claim for excessive force invokes the Fourteenth Amendment, which provides, among other things, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "For those in pretrial confinement . . . claims regarding mistreatment while in custody fall within the ambit of 'the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities.'" *Wise v. Caffey*, 72 F.4th 1199 (10th Cir. 2023) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010)). "[A] pretrial detainee can establish a due-process violation by 'providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) (quoting *Kingsley v.*

5

*Hendrickson*, 576 U.S. 389, 398 (2015)). The plaintiff does not contend that the deputies' actions were not rationally related to a legitimate governmental objective. Nor could he. After all, "the government may have a legitimate interest in ensuring the safety and order of the facilities where it houses pretrial detainees." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). The deputies' actions were geared toward doing exactly that.

Instead, he argues that their force was excessive. "For Fourteenth Amendment excessive-force claims," a court "use[s] those factors set out in *Kingsley* to determine 'the reasonableness or unreasonableness of the force used.'" *Wise*, 72 F.4th at 1206 (quoting *Kingsley*, 576 U.S. at 397). This non-exclusive list of considerations includes "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.*

With respect to defendants Sadler and Herrera, the defendant's claim fails for simple lack of specificity. A plaintiff's claim "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). In this case, the plaintiff fails to allege at all what Sadler and Herrera personally did to him, when each defendant did it, how each defendant's action — or inaction — harmed him, or how each defendant violated his federal rights. Instead, the plaintiff

6

vaguely implicates defendants Sadler and Herrera in the claim, leaving them to guess which constitutional right they allegedly violated. That will not do. [1]

To be sure, the plaintiff, being pro se, is entitled to a liberal construing of his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). As such, the Court makes "some allowances" for any "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But a court cannot "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997). And here, the Court cannot supply the factual notice to Sadler and Herrera that the defendant did not. *See Robbins*, 519 F.3d at 1250. Without such notice, Rule 8's requirements are not met and the action must be dismissed. *See id.* The plaintiff has no contrary contention; indeed, his motion response is silent on this point. *See* ECF No. 105.

The plaintiff's claim against Deputy Hicks at least assigns some specific conduct to him, but it fails for a different reason: under the *Kingsley* factors, it falls short of a due-process excessive-force violation. Under the first factor, it is clear that the defendants needed to use physical force against the plaintiff. The BWC footage shows the plaintiff not complying with the defendants' orders, committing self-harm, and potentially still armed with a weapon. When Hicks opened the cell door for the plaintiff to exit, the plaintiff attempted to kick him. That resistance compelled deputies to take the plaintiff to the ground to gain his compliance. And once on the ground, the plaintiff spat at the deputies, further necessitating force. As such, the first

---

[1] The plaintiff only names Hicks, Sadler-Andreas, and Herrera in his SAC; however, he includes "a list of additional officers that were involved." ECF No. 63 at 7-8. To the extent that the plaintiff intended that these officers be considered defendants, this rationale also applies to them.

*Kingsley* factor weighs in favor of the defendants. *See Nosewicz v. Janosko*, 754 F. App'x 725, 734 (10th Cir. 2018) (unpublished) (noting that the "level of force necessary to gain compliance, but no more," is justified); *see also Welsh v. Diaz*, No. 5:22-CV-237-BQ, 2024 WL 4451758, at *19 (N.D. Tex. June 21, 2024), *report and recommendation adopted*, 2024 WL 4200564 (N.D. Tex. Sept. 16, 2024) (noting that the "[d]eputies used only the amount of force needed to get [plaintiff] on the ground and shackle his ankles and wrists," after several requests for plaintiff to submit to restraints voluntarily were not heeded).

As to the second factor, the plaintiff does not present any evidence that he sustained injuries other than those caused by his self-harm. To be sure, the plaintiff vaguely asserts that the defendants "start[ed] causing [him] pain intentionally," ECF No. 105, but "Tenth Circuit cases that analyzed similar facts have concluded that the use of some force, even resulting in some injury, may not rise to the level of a constitutional violation when the force is used to restrain a resisting prisoner." *Schabow v. Steggs*, No. 16-CV-02232-RBJ-KLM, 2018 WL 1014140, at *8 (D. Colo. Feb. 21, 2018), *report and recommendation adopted*, 2018 WL 1557257 (D. Colo. Mar. 30, 2018). That is what occurred here. As such, the second *Kingsley* factor weighs in favor of the defendants.

The third factor asks whether the deputies made any efforts to temper or limit the force they used. They did. To begin, they attempted to handle the situation initially with words alone, directing the plaintiff to drop his glass shard and lay down on his stomach. Ex. 3 at 00:35-03:02. Deputies warned the plaintiff that if he failed to comply, they would use force. *Id.* They then successfully persuaded the plaintiff to put his hands through the cell door slot to avoid the elevated conflict of confronting an armed inmate. *Id.* at 03:02-04:15. This meant, rather than employing weaponry, the deputies were able to "limit[] the force to that exerted by their own

8

bodies," which "suggests some degree of tempering." *Begay v. Thomas*, CV 22-70 JB/GJF, 2024 WL 3362865, *10 (D.N.M. July 10, 2024), *report and recommendation adopted*, 2024 WL 4315092 (D.N.M. Sept. 27, 2024). Thus, the third *Kingsley* factor weighs in favor of the defendants.

With respect to the fourth and fifth factors — the severity of the security problem and the threat reasonably perceived by the deputies — there is little question that the plaintiff's actions of holding a weapon, harming himself, and actively resisting presented a significant security threat for the deputies. *See id.* at *9 (finding that a significant security threat was present when the plaintiff physically attacked an officer and restricted officers' attempts to restrain him). In light of these circumstances, the fourth and fifth *Kingsley* factors weigh in the defendants' favor.

The sixth factor focuses on whether the plaintiff was actively resisting. He was. The plaintiff initially refused to exit his cell, and when he finally did, he attempted to kick one of the deputies and began spitting at them. Thus, the sixth *Kingsley* factor weighs in favor of the defendants, making all six factors weigh in favor of the defendants.

The plaintiff challenges this conclusion. On his view, he had the glass shard only to hurt himself. Posing no threat to anyone else, then, he complains that the defendants' treatment of him was unduly harsh. ECF No. 105. To be sure, the plaintiff may sincerely believe he posed no threat in that moment. ECF No. 63 at 4. But "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one," *Kingsley*, 576 U.S. at 397, and the objective circumstances presented in the SAC and BWC footage justified a use of force, regardless of the plaintiff's subjective state of mind. The plaintiff seeks to flag the defendants' use of force as inappropriate by complaining of threats to taze him, ECF No. 105 at 1, but "verbal threats and harassment" are "necessarily excluded from the cruel and unusual punishment inquiry."

9

*Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). And while the plaintiff bemoans that deputies could have invited him to proceed to a chair rather than physically bringing him there, ECF No. 63 at 4, he is entitled to constitutionally adequate treatment, not his preferred treatment. *See, e.g.*, *Stevenson v. Cordova*, No. 14-cv-00649-CBS, 2016 WL 5791243, at *21 (D. Colo. Oct. 4, 2016) ("[The plaintiff] may have felt that [the defendants'] response to his earlier disagreement . . . was unreasonable or inappropriate, but that did not give him the right to refuse a lawful command.").

In sum, having evaluated the facts pursuant to the *Kingsley* factors, the Court finds that the plaintiff has alleged no colorable excessive force claim against the defendants. Accordingly, the defendants are entitled to qualified immunity on that basis alone.

Analysis of the second prong of the qualified-immunity analysis provides an additional reason why the defendants are entitled here to dismissal.[2] That prong requires the plaintiff to show that "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995)). That means, at the time of the challenged conduct, "the contours of a right" must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right . . . ." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (internal quotation marks

---

[2] While only defendant Hicks provides an analysis for this prong, the burden is on the plaintiff to establish whether *all* the defendants knew, or should have known, that their actions were constitutional right that was clearly established. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). As such, the Court's analysis applies to all the defendants.

Case No. 1:23-cv-02128-DDD-CYC   Document 110   filed 02/10/25   USDC Colorado
pg 11 of 12

omitted). While a plaintiff is not required to cite such a decision with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), clearly established law must place the constitutional issue "beyond debate." *Mullenix*, 577 U.S. at 12. "The plaintiff bears the burden of citing . . . what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). He makes no attempt to cite law to satisfy that burden. And while the Court has no obligation to look for such law, the Court's independent search has also come up empty. Indeed, Tenth Circuit case law appears to approve of similar uses of force. *See*, *e.g.*, *Nosewicz*, 857 F. App'x at 469 (finding officer's arm-bar takedown of pretrial detainee reasonable where inmate was acting aggressively and screaming in the module).

The short of it is that the plaintiff has not adduced, and the Court has not found, any case law that would have put "every reasonable official" in the defendants' position on notice that their actions would result in a constitutional violation. *al-Kidd*, 563 U.S. at 741. Accordingly, the defendants are entitled to qualified immunity.

There is a coda to add here. Though neither party addresses it, a dismissal should be without prejudice unless it would be futile to allow amendment. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). Here, dismissal is not for lack of pleading specific facts. Rather, this is a situation in which "considering the totality of circumstances and video evidence before the Court, affording the Plaintiff an opportunity to amend the complaint in an attempt to assert a plausible cause of action would be futile." *Est. of Ronquillo*, 2016 WL 10843787, at *6 n.4. The plaintiff's circumstances certainly warrant sympathy — in despair, he attempted suicide, only to have force be used upon him in that desperate situation. But sympathy does not a

constitutional violation make, and the objective video evidence here shows no such violation. Under such circumstances, no purpose would be served by allowing amendment.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the defendants' motion, ECF No. 80, be **GRANTED** and that the Second Amended Complaint be **DISMISSED** with prejudice.[3]

Respectfully submitted this 10th day of February, 2025, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

---

[3] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.